UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
UNITED STATES OF AMERICA

       -against-                  MEMORANDUM OF LAW IN
                                          SUPPORT OF DEFENDANT'S
                                          APPLICATION TO PRECLUDE
WILLIAM HENRIQUEZ,          CROSS-EXAMINATION OF
                                          DEFENDANT AND REBUTTAL
       Defendant.              OF OTHER EVIDENCE AND
                                            COUNSEL'S ARGUMENTS

------------------------------------------------X   05 CR 185 (AKH)

## INTRODUCTION

This memorandum is submitted in support of defendant's application to preclude cross-examination of him and rebuttal of counsel's arguments concerning statements attributed to the defendant at a proffer meeting with representatives of the government on September 24, 2003, on the ground that he was deprived of the effective assistance of counsel at that meeting when he was represented by counsel who has since been disbarred after her plea of guilty to defrauding the government. Counsel failed to provide her client with effective assistance concerning the benefits and risks of participating in the meeting and failed to provide her client with effective assistance in preparing for the meeting. Counsel's failure to fulfill her obligation to her client under the Sixth Amendment to provide effective assistance of counsel in this potential capital prosecution renders statements attributed to the defendant at the proffer meeting inadmissible for impeachment on cross-examination or for rebuttal of counsel's arguments.

## DISCUSSION

In Strickland v. Washington, 466 U.S 662, 687-96, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Court held counsel's representation ineffective when it falls "below an objective standard of reasonableness according to prevailing professional norms, and it is reasonably likely that prejudice occurred – i.e., that

but for counsel's professional errors, the result of the proceeding would have been different." United States v. Arteca, 411 F. 3d 315, 320 (2d Cir. 2005).

The American Bar Association Standards for Criminal Justice, which the Supreme Court has referred to as " 'guides to determining what is reasonable,' " Wiggins v. Smith, 539 U.S. 510, 524, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003), quoting Strickland v. Washington, supra, 466 U.S. at 688, provide that:

> "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty." 1 ABA Standards for Criminal Justice 4-4.1 (3d ed. 1993).

Counsel for the defendant failed to effectively represent her client by advising him to participate in a proffer meeting with representatives of the government, without the reasonable prospect of the benefits of a motion for a downward departure by the government based upon substantial assistance, and with the corresponding risks of participation, and by failing to effectively prepare him to participate in the meeting.

Counsel for the defendant at the proffer meeting has since been disbarred after her plea of guilty to defrauding the government. In United States v. Levy, 377 F. 3d 259 (2d Cir. 259), the Court held, in the context of evaluating a claim of ineffective assistance when counsel had been indicted but not yet convicted, and among additional allegations of drug abuse and money laundering, that her indictment "casts a dark shadow" over her reliability. Id., at 265.

2

Participation in a proffer meeting is indisputably part of the process of negotiating a guilty plea. During such negotiations, the defendant is entitled to effective representation by his counsel. "It is well settled that a defendant's Sixth Amendment right to counsels extends to plea negotiations. See, e.g., United States v. Gordon, 156 F. 3d 376, 379 (2d Cir. 1998) (per curiam) (stating that defendant's Sixth Amendment right attaches at the initiation of formal charges and extends to 'all critical stages of the proceedings,' including plea negotiations)." Davis v. Greiner, 428 F. 3d 81, 87 (2d Cir. 2005). Indeed, "ineffective assistance of counsel during plea negotiation can invalidate a guilty plea and make granting withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of the defendant's decision to plead guilty." United States v. Arteca, supra, 411 F. 3d at 320. See also, Boria v. Keane, 99 F. 3d 492, 496 (2d Cir. 1996), which cites with approval the American Bar Association's Model Code of Professional Responsibility, Ethical Consideration 7-7 (1992): "A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable."

The defendant has been prejudiced by his prior counsel's failures to fulfill her obligation to provide him with effective representation because he has been exposed to the prospect of impeachment during cross-examination with his prior statements and because his present trial counsel's legal or factual arguments may be rebutted by his client's previous statements. The use of the defendant's proffer statements for such purposes has been upheld in United States v. Velez, 354 F. 3d 190, 194-95 (2d Cir. 2004) ("Ordinarily, statements made by a defendant during plea negotiations, including proffer sessions, are inadmissible at trial. Fed. R. Evid. 410; see also, Fed. R. Crim. P. 11(f) (referring to Federal Rule of Evidence 410) (footnote omitted). However, a defendant can waive the protection afforded by Rule 410 as long as there is 'no affirmative indication that the agreement [to waive] was entered into unknowingly or involuntarily,' " citing United States v. Mezzanato, 513 U.S. 196, 115 S. Ct. 797, 130 L. Ed. 2d 697 (1995). See also,

3

United States v. Barrow, 400 F, 3d 109 (2d Cir. 2005), where the Court upheld the District Court's decision that defense counsel's factual assertions in his opening statement and cross-examination of a government witness triggered the waiver provision of a proffer agreement.

Accordingly, because the defendant was not provided with effective representation at the proffer meeting, the government should be precluded from using the statements attributed to the defendant at that meeting.

                                            Respectfully submitted,

                                            _____

Joel M. Stein, Esq. #2385
3 New York Plaza – 10th fl.
New York, NY 10004
(212) 344-8008

Russell Neufeld, Esq.
99 Hudson Street – 8th fl.
New York, NY 10013
(646) 613-8359

4

1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
                                  :
UNITED STATES OF AMERICA
                                           CR-04-0384 (ADS)

         -against-                :
                                           United States Courthouse
                                           Central Islip, New York

VALERIE AMSTERDAM,
                                  :
         Defendant.
                                           April 4, 2005
- - - - - - - - - - - - - - - - X         3:30 p.m.
                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE ARTHUR D. SPATT
                  UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:        ROSLYNN R. MAUSKOPF
                           United States Attorney
                           100 Federal Plaza
                           Central Islip, New York 11722
                           BY:  CYNTHIA MONACO
                                ALLEN BODE
                           Assistant United States Attorneys


For the Defendant:         MORVILLO ABRAMOWITZ GRAND
                           IASON & SILBERBERG, P.C.
                           565 Fifth Avenue
                           New York, New York 10017
                           BY:  ELKAN ABRAMOWITZ, ESQ
                                RICHARD F. ALBERT, ESQ
                                AMY TULLY, ESQ.


Court Reporter:            Perry Auerbach
                           100 Federal Plaza
                           Central Islip, New York 11722
                           (631) 712-6103

         Proceedings recorded by mechanical stenography.
              Transcript produced by computer.
```

Perry Auerbach, CSR, RPR
Official Court Reporter

1  about the sentence that you will receive?

2  THE DEFENDANT: No, your Honor.

3  THE COURT: No one could make you such a
4  promise, because, as I advised you several times, I alone
5  will have to decide on the proper sentence in this case.
6  You understand that?

7  THE DEFENDANT: I do.

8  THE COURT: Ms. Amsterdam, will you describe
9  briefly in your own words what you did in connection with
10 the crime charged in Count One of the second Superseding
11 Indictment.

12 THE DEFENDANT: Your Honor, my close friend and
13 colleague, Mr. John Jacobs, was assigned in the matter of
14 United States versus Susan Flynn pursuant to the Criminal
15 Justice Act.

16 THE COURT: Susan Flynn?

17 THE DEFENDANT: Flynn, F-L-Y-N-N.

18 (Continuing.) And he was assigned pursuant to
19 the Criminal Justice Act which provides representation for
20 indigent defendants.

21 The case was referred to Judge Wexler, who was
22 the presiding judge. In the months leading up to the
23 Flynn trial, Mr. Jacobs both sought my counsel and asked
24 if I would quote/unquote second seat him, if I would
25 assist him in the preparation and trial of the case.

           Twice, with my knowledge, he made written
requests to Judge Wexler asking that I be appointed as
second counsel under the provisions of the Criminal
Justice Act, complex case, and, with my knowledge, twice
Judge Wexler refused Mr. Jacobs' request that I be
assigned.

           At some point Mr. Jacobs believed it was a very
complicated case, asked me to meet with the defendant's
boyfriend, and I did, and the defendant's boyfriend
offered me -- asked if I would assist Mr. Jacobs at the
trial for a flat fee of $10,000, and I agreed to do so;
regarded it as a complicated case. There were four
psychiatrists that were going to be called.

           I did so really more out of friendship than out
of money. I would have done it possibly for nothing if
Mr. Jacobs had asked me to do so.

           In any event, this fee was not disclosed to
Judge Wexler.

           THE COURT: Did you receive the fee of $10,000?
           THE DEFENDANT: I did.
           THE COURT: Did you deposit the checks?
           THE DEFENDANT: Yes, I absolutely did.
           Mr. Jacobs asked for me to be assigned, Judge
Wexler refused, and neither Mr. Jacobs nor myself told
Judge Wexler that I had been hired by the defendant's

Case 1:05-cr-00185-AKH   Document 26   Filed 04/13/06   Page 9 of 17

## PROFFER AGREEMENT

With respect to the meeting of William Henriquez ("Client") and his attorney, Valerie Amsterdam, Esq., with Assistant United States Attorney Harry Sandick to be held at the Office of the United States Attorney for the Southern District of New York on Sepember 24, 2003 ("the meeting"), the following understandings exist:



(1) **THIS IS NOT A COOPERATION AGREEMENT.** The Client has agreed to provide the Government with information, and to respond to questions, so that the Government may evaluate Client's information and responses in making prosecutive decisions. By receiving Client's proffer, the Government does not agree to make a motion on the Client's behalf or to enter into a cooperation agreement, plea agreement, immunity or non-prosecution agreement. The Government makes no representation about the likelihood that any such agreement will be reached in connection with this proffer.

(2) In any prosecution brought against Client by this Office, except as provided below the Government will not offer in evidence on its case-in-chief, or in connection with any sentencing proceeding for the purpose of determining an appropriate sentence, any statements made by Client at the meeting, except in a prosecution for false statements, obstruction of justice or perjury with respect to any acts committed or statements made during or after the meeting or testimony given after the meeting .



(3) Notwithstanding item (2) above: (a) the Government may use information derived directly or indirectly from the meeting for the purpose of obtaining leads to other evidence, which evidence may be used in any prosecution of Client by the Government; (b) in any prosecution brought against Client, the Government may use statements made by Client at the meeting and all evidence obtained directly or indirectly therefrom for the purpose of cross-examination should Client testify; and (c) the Government may also use statements made by Client at the meeting to rebut any evidence or arguments offered by or on behalf of Client (including arguments made or issues raised sua sponte by the District Court) at any stage of the criminal prosecution (including bail, all phases of trial, and sentencing) in any prosecution brought against Client.

(4) The Client understands and agrees that in the event the Client seeks to qualify for a reduction in sentence under Title 18, United States Code, Section 3553(f) or United States Sentencing Guidelines, Sections 2D1.1(b) (6) or 5C1.2, the Office may offer in evidence, in connection with the sentencing, statements made by the Client at the meeting and all evidence obtained directly or indirectly therefrom.



(5) To the extent that the Government is entitled under this Agreement to offer in evidence any statements made by Client or leads obtained therefrom, Client shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, or any other federal rule that such statements or any leads therefrom should be suppressed. It is the intent of this Agreement to waive all rights in the foregoing respects.

1

Rev. 06/03

(6) If this Office receives a request from another prosecutor's office for access to information obtained pursuant to this Proffer Agreement, this Office may furnish such information but will do so only on the condition that the requesting office honor the provisions of this Agreement.

(7) It is further understood that this Agreement is limited to the statements made by Client at the meeting and does not apply to any oral, written or recorded statements made by Client at any other time. No understandings, promises, agreements and/or conditions have been entered into with respect to the meeting other than those set forth in this Agreement and none will be entered into unless in writing and signed by all parties.

(8) The understandings set forth in paragraphs 1 through 7 above extend to the continuation of this meeting on the dates that appear below.

(9) Client and Attorney acknowledge that they have fully discussed and understand every paragraph and clause in this Agreement and the consequences thereof.

Dated: New York, New York

_____
Client

_____
Attorney for Client

JAMES B. COMEY
United States Attorney for the
Southern District of New York

By: _____
Assistant United States Attorney

_____
Witness

**Dates of Continuation**

**Initials of counsel, Client, AUSA, witness**

2

Rev. 06/03

TOTAL P.04



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 30, 2006

BY FACSIMILE

Joel Stein, Esq.
3 New York Plaza – 10th Floor
New York, New York 10004

Russell T. Neufeld
99 Hudson Street, 8th Floor
New York, NY 10013

      Re:   United States v. William Henriquez
              05 Cr. 185 (AKH)

Dear Counsel:

      This letter provides supplemental discovery pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure. In particular, I have enclosed a copy of the proffer agreement from a meeting held on September 24, 2003 at 1 St. Andrew's Plaza.

      At this proffer session, the proffer agreement was reviewed with Henriquez by the Government, paragraph by paragraph. After the proffer agreement was reviewed in detail, Henriquez, in substance and in part, made the following statements: that he had never participated in any robberies or drug-dealing activity; that he pleaded guilty to his prior state court drug conviction on the advice of counsel, but that he did not in fact, commit the charged offense in that proceeding; and that he was only familiar with a pool hall in the vicinity of 181st Street and Valentine Avenue in the Bronx, New York because it was near his church. When the Government (through statements made by agents and/or prosecutors present at the meeting) expressed skepticism with Henriquez's answers, Henriquez insisted that he was telling the truth. The meeting then ended, having not lasted more than one-half hour.

      Very truly yours,

      MICHAEL J. GARCIA
      United States Attorney
      Southern District of New York

By: _____
      HARRY SANDICK
      Assistant United States Attorney
      (212) 637-2340

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
UNITED STATES OF AMERICA

        -against-                                  **AFFIDAVIT**
                                                     05 CR 185 (AKH)

WILLIAM HENRIQUEZ,

        Defendant.

------------------------------------------------X

        WILLIAM HENRIQUEZ, being duly sworn, hereby deposes and states under penalty of perjury:

1. I am the defendant in the above-captioned matter.

2. This affidavit is submitted in support of my request that the Court enter an order precluding the government from cross-examination of me concerning statements attributed to me at a meeting with representatives of the government on September 24, 2003.

3. At that meeting I was represented by my previous attorney, Valerie Amsterdam.

4. Prior to that meeting, Ms. Amsterdam did not discuss with me an incident which is alleged to have occurred in the vicinity of 5 Cabrini Blvd., New York, New York, in August, 2000, nor did she discuss with me the benefits or risks of answering questions at this meeting.

5. This affidavit has been translated for me into Spanish by an interpreter assisting my present attorney.

Sworn to on the
5th day of April, 2006

JOEL M. STEIN
Notary Public, State of New York
No. 24-4672474
Qualified in Kings County
Commission Expires Aug. 31, ~~199~~ 2006

                                                     WILLIAM HENRIQUEZ

38

1  boyfriend.
2           Indeed, when we were in court the day of jury
3  selection, Judge Wexler made inquiry as to my presence at
4  this trial, and Mr. Jacobs indicated, and I, too,
5  indicated that I was appearing as pro bono.
6           That was an intentionally false statement. I
7  knew that I had received a $10,000 fee from the
8  defendant's boyfriend.
9           I fully accept the consequences of my actions.
10 I most sincerely apologize to Judge Wexler, to this court,
11 to my family, to other colleagues, and specifically to
12 many judges in the Southern District in particular who
13 have been so supportive to me, both in terms of being a
14 measurement for me and would embrace their faith and
15 confidence in me.
16          I understand that I have disgraced myself and
17 that I have disgraced my profession. I've injured my
18 children. I've injured my family. And most significant
19 to me, I squandered my professional gifts, ruined my
20 reputation and career. And I am deeply ashamed, very
21 remorseful, and accept full responsibility for my conduct.
22          THE COURT: And in court when Judge Wexler
23 stated to you, "you are not co-counsel," you said, "I'm
24 not being paid, your Honor, I'm co-counsel."
25          Correct?

1  THE DEFENDANT: That's correct, your Honor.

2  THE COURT: You knew that was intended to
3  deceive Judge Wexler?

4  THE DEFENDANT: That is correct, your Honor.

5  THE COURT: Anything else, Ms. Amsterdam?

6  MR. ABRAMOWITZ: Ms. Monaco.

7  THE COURT: I'm sorry, Ms. Monaco.

8  MS. MONACO: Your Honor, there are just two
9  small factual distinctions that the government's proof has
10  with what Ms. Amsterdam stated. I don't think it goes to
11  the heart of her allocution, but I would just like to put
12  before the Court.

13  THE COURT: Go ahead. You can add anything that
14  you want to add.

15  MS. MONACO: The government's evidence is that
16  Mr. Jacobs was not appointed pursuant to the Criminal
17  Justice Act. His wife was appointed to represent Susan
18  Flynn pursuant to the Criminal Justice Act, and Mr. Jacobs
19  just began make the appearances on Ms. Seltzer's behalf.
20  I don't think that affects Ms. Amsterdam's plea
21  allocution. It's just a small factual --

22  THE COURT: If that's what happened, you want it
23  to be accurate.

24  MS. MONACO: Yes, your Honor.

25  The second point is I think Ms. Amsterdam