UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                    :

   -v.-                                       :
                                     S3 05 Cr. 185 (AKH)

WILLIAM HENRIQUEZ,                          :
FABIO LNU,
   a/k/a "Morenito,"                        :
JOSE LUIS ACOSTA,
      a/k/a "Glenko,"                     :
      a/k/a "Gruno,"
FNU LNU,                                    :
      a/k/a "Jando,"
FNU LNU,                                    :
      a/k/a "Jonathan,"
                                            :

             Defendants.                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## GOVERNMENT'S MEMORANDUM OF LAW
## IN OPPOSITION TO HENRIQUEZ'S PRETRIAL MOTION


MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Of Counsel:

   Harry Sandick
   Daniel L. Stein
   Assistant United States Attorneys

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | |
|   -v.- | : |
| | S3 05 Cr. 185 (AKH) |
| WILLIAM HENRIQUEZ, | : |
| FABIO LNU, | |
|     a/k/a "Morenito," | : |
| JOSE LUIS ACOSTA, | |
|     a/k/a "Glenko," | : |
|     a/k/a "Gruno," | |
| FNU LNU, | : |
|     a/k/a "Jando," | |
| FNU LNU, | : |
|     a/k/a "Jonathan," | |
| | : |
|        Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### GOVERNMENT'S MEMORANDUM OF LAW
### IN OPPOSITION TO HENRIQUEZ'S PRETRIAL MOTION

_____The Government respectfully submits this memorandum in opposition to the pretrial

motion submitted by defendant William Henriquez.  Henriquez is charged in a four-count

Indictment, which charges him with one count of conspiracy to commit armed robbery and one

count of substantive armed robbery, both in violation of Title 18, United States Code, Section

1951, one count of using, carrying and discharging a firearm during and in relation to a crime of

violence, in violation of Title 18, United States Code, Sections 924(c) and 2, and one count of

causing the death of another while using, carrying, and discharging a firearm during and in

relation to a crime of violence, in violation of Title 18, United States Code, Sections 924(j) and

2.  These charges all relate to the murder of Jaime Valentin on August 20, 2000, which occurred

while Henriquez and others were committing a drug-related homicide.  William Henriquez has

moved to suppress the statements that he made at a proffer session with the Government on

September 24, 2003.  For the reasons set forth below, this motion should be denied.

## BACKGROUND

**A.      Henriquez's Proffer Session**

On September 24, 2003, William Henriquez participated in a proffer session with the

Government.  At the time of this proffer session, Henriquez was charged in Indictment 03 Cr.

788 (BSJ), which contained a single count, alleging that Henriquez illegally reentered the United

States after being deported subsequent to a conviction for an aggravated felony, in violation of

Title 8, United States Code, Section 1326.  Henriquez was represented by Valerie Amsterdam,

who was appointed counsel pursuant to the Criminal Justice Act.  Amsterdam was also on the

Southern District of New York's panel of attorneys eligible for appointment in capital cases, and

she had previously represented other defendants facing death-eligible charges.[1]

During the course of the illegal reentry prosecution, the Government advised Amsterdam

that Henriquez was also being investigated for participation in crimes of violence (including

homicide and armed robbery) and drug dealing.  The Government advised Amsterdam that its

investigation was proceeding, and that the Government was not then in a position to charge

Henriquez and others with homicide, but that it expected to be able to charge Henriquez in the

---

[1]  As the Court is doubtless aware, Amsterdam has been convicted of one count of
conspiracy to defraud the United States through the submission of false and fraudulent
applications for appointment of counsel under the Criminal Justice Act.  *See United States* v.
*Amsterdam*, 04 Cr. 384 (ADS).  On June 30, 2006, Amsterdam was sentenced principally to 6
months' imprisonment.  The existence of the investigation that led to Amsterdam's prosecution
and conviction was not known to Amsterdam until in or about late December 2003 or early
January 2004.  After the investigation became public, and after Judge Jones conducted a *Curcio*
hearing, Henriquez asked Judge Jones for the appointment of new counsel.  Judge Jones
appointed Joel Stein, Esq., who continues to represent Henriquez.

future.  The Government advised Amsterdam that it would be interested in Henriquez's

cooperation in its investigation.[2]

      After some discussions between the Government and Amsterdam, Amsterdam scheduled

a proffer session with the Government.  As noted above, this meeting was held on September 24,

2003, at the Office of the United States Attorney at 1 St. Andrew's Plaza.  In addition to

Henriquez and Amsterdam, at least three other individuals were present at the meeting: Assistant

United States Attorney Harry Sandick, Investigator Billy Ralat of the United States Attorney's

Office, and Special Agent Michael Zeppieri of the Bureau of Alcohol, Tobacco and Firearms.

      The meeting was conducted pursuant to the standard form proffer agreement used by the

Government (the "Agreement" or "Proffer Agreement").  At the outset of the meeting, the

prosecutor reviewed every paragraph of the Agreement with Henriquez.  The prosecutor initialed

each paragraph of the Agreement as he reviewed it with Henriquez.  The Agreement made clear

that it was "not a cooperation agreement" but that Henriquez was meeting with the Government

in order to "provide the Government with information, and to respond to questions, so that the

Government may evaluate [his] information and responses in making prosecutive decisions."

(Agreement ¶ 1).  The Agreement stated that "[i]n any prosecution brought against [Henriquez]

by this Office, except as provided below the Government will not offer in evidence on its case-

in-chief, or in connection with any sentencing proceeding for the purpose of determining an

---

[2]  In an August 29, 2003 letter to Judge Jones seeking an adjournment of a pretrial
conference, the Government explained that it "has had discussions with the defense concerning
the possibility that the defendant may have information about a group of individuals who are
currently under investigation by the New York City Police Department and the Drug
Enforcement Administration for three homicides, multiple home invasion robberies and drug
trafficking activities."

appropriate sentence, any statements made by Client at the meeting, except in a prosecution for false statements, obstruction of justice or perjury with respect to any acts committed or statements made during or after the meeting or testimony given after the meeting."  (Agreement ¶ 2).

However, paragraph three of the Agreement then made clear that there were important exceptions to the Government's promise not to use Henriquez's statements against him:

> Notwithstanding item (2) above: (a) the Government may use information derived directly or indirectly from the meeting for the purpose of obtaining leads to other evidence, which evidence may be used in any prosecution of Client by the Government; (b) in any prosecution brought against Client, the Government may use statements made by Client at the meeting and all evidence obtained directly or indirectly therefrom for the purpose of cross-examination should Client testify; and (c) the Government may also use statements made by Client at the meeting to rebut any evidence or arguments offered by or on behalf of Client (including arguments made or issues raised sua sponte by the District Court) at any stage of the criminal prosecution (including bail, all phases of trial, and sentencing) in any prosecution brought against Client.

(Agreement ¶ 3).

The final paragraph of the Agreement made clear that both Amsterdam and Henriquez, by virtue of their signatures, "acknowledge[d] that they have fully discussed and understand every paragraph and clause in this Agreement and the consequences thereof."  (Agreement ¶ 9). Beneath the text of the Agreement are signatures by Henriquez, Amsterdam, Sandick and Zeppieri.

The proffer session lasted less than a half-hour.  During the proffer session, Henriquez denied that he had ever participated in any robberies or drug-dealing activity, contending that he pleaded guilty to his prior state court drug conviction on the advice of counsel, but that he did not

-4-

in fact, commit the charged offense in that proceeding.  He acknowledged being familiar with a pool hall in the vicinity of 181st Street and Valentine Avenue in the Bronx, New York, but only because it was near his church.  Despite expressions of skepticism from the agents and the prosecutor, Henriquez insisted that he was telling the truth.

**B.      Henriquez's Motion**

In his motion, Henriquez seeks to preclude the Government from "cross-examination of the defendant or from rebuttal of other evidence or counsel's arguments concerning statements attributed to the defendant at a meeting with representatives of the government on September 24, 2003."  Henriquez contends that he "was not provided effective assistance of counsel at said meeting."  Alternatively, Henriquez requests an evidentiary hearing "to resolve any factual issues concerning the defendant's application."

In support of his motion, Henriquez submits a short affidavit in which he states that, prior to the proffer session, his former attorney, Valerie Amsterdam, "did not discuss with [him] an incident [that] is alleged to have occurred in the vicinity of 5 Cabrini Blvd., New York, New York, in August 2000, nor did she discuss with me the benefits or risks of answering questions at this meeting."  (Henriquez Aff. ¶ 4).  Henriquez's affidavit does not otherwise explain what he and Amsterdam discussed prior to the proffer, or what he believed to be the purpose of the meeting.  Significantly, Henriquez does not state whether he understood the Government's explanation of the proffer agreement.

Henriquez's motion also includes an attorney affirmation written by Joel M. Stein, Esq., who is currently counsel to Henriquez.  In this affirmation, Stein summarizes the proceedings and also presents arguments in support of the motion.  Stein contends that "[i]t is my

understanding that because a significant part of the government's case is based upon the testimony of cooperating witnesses, the defendant's potential information would have been unlikely to substantially assist the government." (Stein Aff. ¶ 8).  He also contends that "[a]dvising the defendant to participate in a proffer meeting with the government, notwithstanding the limited protection of a proffer agreement, exposes the defendant to the exceptions to proffer agreement, but without the reasonable prospect of the benefits of a motion for a downward departure by the government based upon substantial assistance." (Stein Aff. ¶ 8).  He contends that "advising the defendant to participate in a proffer meeting with the government with no apparent advantages and with serious potential consequences rendered the assistance provided by counsel ineffective." (Stein Aff. ¶ 8).

## ARGUMENT

The Government opposes Henriquez's motion to suppress his proffer statements.  First, Henriquez's affidavit does not demonstrate, as it must, that he entered into the Agreement unknowingly or involuntarily.  The Proffer Agreement, signed by Henriquez, is compelling proof that Henriquez understood the Agreement before he signed it.  Regardless of the advice of counsel, the Government carefully explained the Agreement to him in detail.  Henriquez's vague affidavit does not refute the clear evidence of Henriquez's understanding of the Agreement.

The Government also rejects Henriquez's one-sentence characterization of his discussions with Valerie Amsterdam.  Accordingly, if the Court declines to deny this motion on the papers, then the Government respectfully suggests that the Court should conduct an evidentiary hearing at which Henriquez can testify (and be subject to cross-examination) and at which the Government can call witnesses to rebut Henriquez's testimony.  If an evidentiary

hearing is conducted, the Government anticipates that Amsterdam, if called to testify, will provide an account of these discussions that is markedly different from Henriquez's short affidavit, and that makes clear that Henriquez received effective assistance from Amsterdam.

## A.      Applicable Law

### 1.      Validity Of Proffer Agreements

Rule 410 of the Federal Rules of Evidence provides, in relevant part, that "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty" are not "admissible against the defendant who . . . was a participant in the plea discussions." The rule ordinarily operates to bar the introduction at trial of statements made by a defendant during plea negotiations. Because Rule 410 is an exception to the general principle that all relevant evidence is admissible at trial, its limitations should not be read broadly. *See United States* v. *Barrow*, 400 F.3d 109, 116 (2d Cir. 2005).

A defendant may waive the right to prevent the use at trial of statements made in plea negotiations, so long as the waiver is knowing and voluntary. *United States* v. *Mezzanatto*, 513 U.S. 196, 209-10 (1995). The Second Circuit has held that "before the waiver can be deemed unenforceable, the trial judge must find 'some affirmative indication that the agreement [to waive] was entered into unknowingly or involuntarily.'" *United States* v. *Velez*, 354 F.3d 190, 196 (2d Cir. 2004) (quoting *Mezzanato*, 513 U.S. at 210). The *Velez* Court explained that "[a] waiver is made knowingly if the defendant has 'a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it' and it is voluntary if it is 'the product of a free and deliberate choice rather than intimidation, coercion or deception.'" *Id*. (quoting *Moran* v. *Burbine*, 475 U.S. 412, 421 (1986)).

The Second Circuit has previously held that the standard proffer agreement executed by Henriquez may operate as an enforceable waiver of a defendant's privilege under Rule 410. *United States* v. *Velez*, 354 F.3d at 196 ("Where a proffer agreement is entered into knowingly and voluntarily, a provision in which defendant waives his exclusionary privilege under Federal Rule of Evidence 410 by permitting the Government to introduce defendant's proffer statements to rebut contrary evidence or arguments presented by the defense, whether or not defendant testifies, is enforceable."); *accord United States* v. *Barrow*, 400 F.3d at 116 (noting that, in light of *Mezzanatto* and *Velez*, the defendant did not even challenge the validity of the waiver provision or contend that it violated his rights to present a defense, to the assistance of counsel, or to a fair trial).

If Henriquez did not knowingly and intelligently waive the protections of Rule 410, then the statements that Henriquez made in the proffer session may not be used in the Government's direct case, or even to impeach Henriquez. *See United States* v. *Lawson*, 683 F.2d 688, 692 (2d Cir. 1982) (holding that statements protected by Rule 410 may neither be used in the Government's case-in-chief or to impeach the defendant). However, this Court will still remain "duty bound to protect the integrity of the proceeding and to ensure that matters presented to the jury are grounded in good faith. *See, e.g.,* N.Y. Comp. Codes R & Regs. tit. 22, § 1200.33 [DR 7-102] (2000)." *United States* v. *Lauersen*, 98 Cr. 1134 (WHP), 2000 WL 1693538, at * 8 (Nov. 13, 2000). As a result, even if Henriquez's motion is granted, "absent a good-faith basis," defense counsel still "may not present evidence or arguments on [the defendant's] behalf that directly contradict" the statements that he made in the proffer. *Id*.

-8-

### 2.    Ineffective Assistance Of Counsel

To demonstrate a Sixth Amendment violation based on ineffective assistance of counsel, a defendant must show both (1) that his or her attorney's performance was deficient as measured by objective professional standards, and (2) that this deficiency prejudiced his or her defense. *See Strickland* v. *Washington*, 466 U.S. 668, 687 (1984).  The Supreme Court has observed that "[t]here are countless ways to provide effective assistance in any given case."  *Id*. at 689.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id*. at 689; *accord McKee* v. *United States*, 167 F.3d 103, 106 (2d Cir. 1999).

In assessing the reasonableness of the attorney's performance, a court, operating with the benefit of hindsight, should not attempt to decide whether an alternative course of action might have led to a more favorable result for the petitioner.  *See Flores* v. *Demskie*, 215 F.3d 293, 303 (2d Cir. 2000); *Balbuena* v. *United States*, 104 F. Supp.2d 218, 221 (S.D.N.Y. 2000).  Rather, a court is instructed to determine "whether or not the course actually pursued [by the attorney] 'might be considered sound strategy' by the attorney at the time."  *Balbuena*, 104 F. Supp.2d at 221 (quoting *Strickland*, 466 U.S. at 689).

Even if the reviewing court determines that an attorney's performance was objectively unreasonable and unprofessional, the prejudice component of *Strickland* must still be satisfied in order to warrant reversal of the defendant's conviction on ineffective assistance grounds.  This second prong of *Strickland* requires the court to decide whether "the result of the proceeding was fundamentally unfair or unreliable."  *Lockhart* v. *Fretwell*, 506 U.S. at 369.  "The prejudice

component of the *Strickland* test . . . focuses on the question whether counsel's deficient

performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id*.

at 372.

**B.     Discussion**

The Court should deny Henriquez's motion to suppress the statements made at the proffer

session.  First, Henriquez's affidavit, standing alone, does not support granting the motion.  For

the Court to find Henriquez's statements inadmissible, Henriquez must give "some affirmative

indication that the agreement was entered into unknowingly or involuntarily."  *Mezzanato*, 513

U.S. at 210; *Velez*, 354 F.3d at 196.  Henriquez's affidavit fails to meet this standard.  He never

states that he failed to understand the Agreement, or that he was forced to enter into it.

Henriquez only makes two statements about the proffer session: that Amsterdam did not discuss

the homicide with him prior to the proffer, and that she did not discuss "the benefits or risks of

answering questions" in the proffer.  (Henriquez Aff. ¶ 4).

These statements simply do not make out the requisite affirmative showing that

Henriquez entered the proffer agreement involuntarily or unknowingly .  First, Henriquez never

disputes that he entered into the proffer agreement voluntarily.  A statement is voluntary if it is

"the product of a free and deliberate choice rather than intimidation, coercion or deception."

*Moran* v. *Burbine*, 475 U.S. at 421.  By contrast, a statement is "involuntary" within the meaning

of the Fifth Amendment if it is obtained through "'techniques and methods offensive to due

process' or under circumstances in which the suspect lacked an opportunity to exercise 'a free

and unconstrained will.'"  *Oregon* v. *Elstad*, 470 U.S. 298, 304 (1985) (quoting *Haynes* v.

*Washington*, 373 U.S. 503, 515 (1963)).

Henriquez does not contend, nor could he, that he entered into the Proffer Agreement as a result of any coercion or threats.  No one forced Henriquez to sign the Agreement.  Henriquez does not identify any intimidation on the part of anyone at the meeting.  Therefore, Henriquez's agreement to waive his rights under Rule 410 was entirely voluntary.

Second, Henriquez knowingly entered into the Agreement.  A waiver of rights is knowing if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  *Moran* v. *Burbine*, 475 U.S. at 421.  Here, Henriquez does not deny that he understood the rights under Rule 410 that he was abandoning by entering into the Agreement.  He only says that Amsterdam did not discuss the homicide with him prior to the proffer, and that she did not discuss "the benefits or risks of answering questions" in the proffer.  (Henriquez Aff. ¶ 4).  Henriquez's current claim, however, is wholly inconsistent with his acknowledgment, made on the day of the proffer session.  In the final paragraph of the Agreement, Henriquez and Amsterdam both "acknowledge[d] that they have fully discussed and understand every paragraph and clause in this Agreement and the consequences thereof."  (Agreement ¶ 9).  Henriquez never disputes this acknowledgment.

Moreover, Henriquez does not state that he actually was unaware of the benefits or risks of participating in the proffer session—he only contends that Amsterdam failed to discuss these subjects with him.  Put differently, whatever advice that Henriquez may have received from his attorney, Henriquez does not deny that the Government reviewed the Agreement with him, explained its provisions to him, and confirmed his understanding and agreement by asking him to sign the Agreement.  This careful, paragraph-by-paragraph review of the Agreement by the Government sufficed to make Henriquez's agreement knowing.

-11-

Judge Swain's decision in *United States* v. *Avendano*, 02 Cr. 1059 (LTS), 2003 WL 22454664 (S.D.N.Y. Oct. 29, 2003) is instructive in this regard.  In *Avendano*, the defendant claimed that he did not knowingly and voluntarily enter into the proffer agreement.  Several of the arguments made by Avendano are similar to those made here by Henriquez.  For example, Avendano submitted a declaration that "his attorney provided a faulty explanation of the significance of the Proffer Agreement, leading Avendano to understand that the proffer sessions were a chance to speak to the Government 'without having to worry that [his] statements could be used against [him]."  *United States* v. *Avendano*, 2003 WL 22454664, at *6.  Avendano's declaration was "the sole piece of testimonial evidence proffered by the defense in connection with the motion."  *Id*.  Avendano did not submit an affidavit from his attorney "attesting to his understanding of the provisions of the Proffer Agreement or commenting upon Avendano's account of the advice given."  *Id*.  As here, "the executed Proffer Agreement itself includes a signed acknowledgment by the attorney and by Avendano himself that they had 'fully discussed and understand every paragraph and clause in this Agreement and the consequences thereof.'"  *Id*.

In *Avendano*, when the Government adduced evidence to show that a prosecutor reviewed the proffer agreement with Avendano, explained the various provisions of the agreement to Avendano, and made certain that Avendano understood the agreement, the Court ruled that Avendano's waiver was knowing and voluntary.  *Id*. at *7.  The Court also rejected Avendano's "account of his understanding of the statements made by his lawyer" as "not credible" and it did so without any testimony from the attorney who represented the defendant at the proffer.  *Id*.

-12-

*Avendano* is directly relevant here.  Henriquez has adduced no more evidence than has Avendano.  Like Avendano, Henriquez has submitted only his own affirmation to support his claim that he did not understand the Proffer Agreement, partly because his attorney neglected to explain the Agreement to him.  He has not submitted any statement by his attorney.  Like Avendano, Henriquez's affidavit does not contradict his contemporaneous acknowledgment that he understood the Agreement when he signed it.  The Government proffers that, just as in *Avendano*, it reviewed every paragraph of the Agreement with Henriquez.  Indeed, the Agreement itself bears the evidence of this review: next to each paragraph, the prosecutor marked his initials as he reviewed it.  Henriquez does not deny any of this.  In short, Henriquez's conclusory affidavit does not make out a case that his waiver was involuntary or unknowing.

Finally, if the Court concludes that an evidentiary hearing is required, then the Government intends to question Henriquez about his understanding of the Agreement in order to demonstrate that his waiver was knowing and voluntary.  The Government also intends to question Henriquez about his own decision-making process in agreeing to participate in the proffer session, and to explore his consultations with Amsterdam.  Moreover, the Government will adduce evidence from a participant in the proffer, much as the Government did in *Avendano*. In *Avendano*, the Court denied the defense motion in the absence of any testimony from defense counsel.  Nonetheless, the Government is also prepared to call Valerie Amsterdam to testify about what she and Henriquez discussed, and to testify about her strategic advice to Henriquez. She will testify about her discussions with the Government, and explain why she advised Henriquez to participate in a proffer session.

In addition, the Court should not accept the wholly unsupported claim made in Joel Stein's affidavit that "because a significant part of the government's case is based upon the testimony of cooperating witnesses, the defendant's potential information would have been unlikely to substantially assist the government."  (Stein Aff. ¶ 8).  The Government does not know the basis for this assertion, which is simply mistaken, and which the Court should not rely upon in determining whether Amsterdam provided effective assistance to Henriquez.  Indeed, Henriquez could have provided the Government with substantial assistance precisely because the Government was then conducting an historical investigation that required the testimony of multiple cooperating witnesses.  Had Henriquez been truthful at the September 24, 2003 proffer session, the Government would surely have given Henriquez an opportunity to try to cooperate with the Government.  Henriquez's assistance, if it had been provided, in September 2003 (which was some seventeen months before Henriquez's indictment in this case), Henriquez's assistance would very likely have amounted to substantial assistance, and the defense has no basis to claim otherwise.

Moreover, a decision to cooperate prior to indictment, at the earliest possible stage in an investigation, is a reasonable strategic decision that often results in considerable benefits to defendants.  Common sense and experience both suggest that an individual defendant's cooperation may be useful to the Government early in an investigation but become unnecessary as other witnesses are identified and persuaded to provide information to the Government. Whether Amsterdam's recommendation that Henriquez meet with the Government was the best decision, when viewed in hindsight, is entirely irrelevant.  Because it was plainly a reasonable strategic recommendation given the circumstances, it cannot give rise to a finding of ineffective

assistance.[3]

Further, any prejudice that flowed from her recommendation to proffer was minimal. Henriquez said very little and nothing at all inculpatory during the short proffer session. Henriquez said nothing that will prevent his attorney from arguing actual innocence at trial, or that will prevent Henriquez from testifying that he did not commit the charged offenses or from denying any prior association with his co-defendants. His proffer statements amounted to, at best, non-specific false exculpatory statements. In short, there is no reason to believe that Amsterdam's advice was unprofessional or that it caused any prejudice to Henriquez. Neither part of the *Strickland* analysis has been shown by Henriquez.

---

[3]   Indeed, if Amsterdam had recommended against Henriquez's participation in a proffer session, Henriquez might now be claiming that Amsterdam's ineffectiveness denied him an opportunity to cooperate when cooperation was still a viable option. Given Amsterdam's own criminal conviction, she has become an easy target for a defendant who seeks to claim that she was ineffective. This is notwithstanding Amsterdam's record and reputation as a zealous and effective advocate. For example, Judge Lynch described Amsterdam's reputation in a recent decision:

> Amsterdam, an attorney with over 25 years of experience at the criminal bar, is well known to this Court as an extremely capable and zealous defense attorney. . . . [S]he is one of only approximately 20 attorneys in this district who have been certified by the Court as qualified to handle capital cases. Moreover, the Court has observed that, even among the ranks of determined defenders, Amsterdam stands out for her dedication to her clients, and her success in achieving a personal rapport with them.

*United States* v. *Ramos*, 350 F. Supp. 2d 413, 416 (S.D.N.Y. 2004). Simply put, the implicit suggestion in Henriquez's motion—that Amsterdam's conviction renders all of her legal advice suspect—should be rejected.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the Court should

deny Henriquez's motion.

Dated:  New York, New York
        July 21, 2006

                                    Respectfully submitted,

                                    MICHAEL J. GARCIA
                                    United States Attorney


                        By:     _____
                                HARRY SANDICK
                                DANIEL L. STEIN
                                Assistant United States Attorneys
                                Tel.: (212) 637-2340/2407

-16-

## CERTIFICATE OF SERVICE

Harry Sandick deposes and says that I am employed in the Office of the United States Attorney for the Southern District of New York, and that on July 21, 2006, I caused to be served one copy of the within Government's Memorandum of Law in Opposition by first class mail to each of the following counsel:

Joel Stein, Esq.                            Russell T. Neufeld
3 New York Plaza – 10th Floor               99 Hudson Street, 8th Floor
New York, New York 10004                    New York, NY 10013

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

_____
HARRY SANDICK
Assistant United States Attorney
(212) 637-2340

Dated: New York, New York
       July 21, 2006